IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

WEST VIRGINIA HIGHLANDS
CONSERVANCY, OHIO VALLEY
ENVIRONMENTAL COALITION,
and SIERRA CLUB,

Plaintiffs,

v.  CIVIL ACTION NO. 2:13-cv-12500
(Consolidated with NO. 2:13-cv-14877)

POCAHONTAS LAND CORPORATION,

## CONSENT DECREE

### I. RECITALS

1.  On May 28, 2013, Plaintiffs Ohio Valley Environmental Coalition, Inc.; West Virginia Highlands Conservancy, Inc.; and Sierra Club (collectively "Plaintiffs") filed a Complaint for Declaratory and Injunctive Relief and for Civil Penalties against Defendant Pocahontas Land Corporation ("Pocahontas" or "Defendant") in Civil Action Number 2:13-cv-12500. On June 19, 2013, Plaintiffs filed a similar Complaint for Declaratory and Injunctive Relief and for Civil Penalties against Pocahontas in Civil Action Number 2:13-cv-14877. These two civil actions will be collectively referred to as the "Complaints." On March 13, 2015, the United States District Court for the Southern District of West Virginia consolidated these two civil actions, with Civil Action No. 2:13-cv-12500 designated as the lead case.

2.  The Complaints alleged that Pocahontas had discharged and continues to discharge the pollutant selenium from three valley fills on its property in Mingo County, WV

1

without a National Pollution Discharge Elimination System (NPDES) Permit issued pursuant to Section 402 of the federal Clean Water Act ("CWA"), 33 U.S.C. § 1342.

3. Defendant does not admit any liability arising out of the transactions or occurrences alleged in the Complaints nor does Defendant admit any fact or legal conclusion or liability alleged in the Complaints or addressed in this Consent Decree.

4. The Parties recognize, and the Court by entering this Consent Decree finds, that the Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties, and that this Decree is fair, reasonable and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED AND DECREED as follows:

## II. JURISDICTION AND VENUE

5. For purposes of this Consent Decree, the Parties agree that this Court has jurisdiction over the Parties and over the subject matter of these actions pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 33 U.S.C. § 1365 (CWA citizen suit provision).

6. For purposes of this Consent Decree, the Parties agree that venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(b) and (c), because it is the judicial district in which Defendant is located, resides and/or does business, and/or in which the violations alleged in the Complaints occurred, as well as 33 U.S.C. § 1365(c)(1), because the sources of the alleged CWA violations are located in this judicial district.

7. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to this Court's jurisdiction over this Consent Decree and consents to venue in this judicial district.

## III. APPLICABILITY

8.     The provisions of this Consent Decree apply to and are binding upon Plaintiffs and any of their respective successors and/or assigns and those with authority to act on their behalf; including, but not limited to, their officers, directors, and staff; upon Defendant and any of its respective successors and/or assigns; and upon other persons or entities otherwise bound by law.

9.     The transfer of ownership or operation of the Property prior to termination of this Consent Decree shall not relieve Defendant of its obligation to ensure that the terms of this Consent Decree are implemented, unless Defendant complies with the requirements of this Paragraph 9.  Prior to any transfer of ownership or operation of the Property, Defendant shall provide a copy of this Consent Decree to the proposed transferee and require the transferee to provide written confirmation acknowledging the terms of the Consent Decree and confirming that the transferee will be bound by those terms.  Upon such written confirmation, the Defendant shall no longer be subject to this Consent Decree.

## IV. DEFINITIONS

10.    Terms used in this Consent Decree that are defined in the CWA or in regulations issued pursuant thereto shall have the meanings assigned to them therein, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

    a.    "Complaints" shall mean the Complaints for Declaratory and Injunctive Relief and for Civil Penalties filed by Plaintiffs in Civil Action Number 2:13-cv-12500 on May 28, 2013 and in Civil Action Number 2:13-cv-14877 on June 19, 2013;

    b.    "Consent Decree" or "Decree" shall mean this Consent Decree;

c. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday or federal holiday, the period shall run until the close of business of the next business day;

d. "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket;

e. "Parties" shall mean Plaintiffs and Defendant;

f. "Property" shall mean the following parcels of land owned by Pocahontas, as designated by the Assessor of Mingo County, West Virginia: 1) Parcel No. 1 on Tax Map 533, containing approximately 150 acres; 2) Parcel No. 6 on Tax Map 532, containing approximately 540 **acres and Parcel No. 54 on Tax Map 512,** containing approximately 10 acres, located on the Right Fork of Ben Creek; and 3) Parcel No. 66 on Tax Map 469, containing approximately 124 acres;

g. "Valley Fills" shall mean the following three valley fills located on the Property: 1) the valley fill designated as Durable Rock Fill No. 4 as authorized by West Virginia Surface Mining Permit No. S501689; 2) the valley fill designated as Durable Rock Fill No. 3 as authorized by West Virginia Surface Mining Permit No. S503889; and 3) the valley fill designated as Hollow Fill No. 3 as authorized by West Virginia Surface Mining Permit No. S503193;

h. "WVDEP" shall mean the West Virginia Department of Environmental Protection.

## V. CIVIL PENALTY

11. The Parties agree that no civil penalties shall be requested by the Parties to be paid by Pocahontas for any alleged unpermitted discharges of selenium or other pollutants from the Valley Fills that have occurred or may occur up to the Effective Date of this Consent Decree or that occur prior to termination of this Consent Decree. Moreover, Defendant's participation in and obligations under this Consent Decree are expressly conditioned upon final judgment being rendered on the Complaints without the imposition of any civil penalties.

## VI. COMPLIANCE REQUIREMENTS

12. This Consent Decree in no way affects or relieves Pocahontas of its responsibility to comply with applicable federal, state and local laws, regulations and permits, but Plaintiffs shall not seek any remedies or penalties under the CWA for alleged unpermitted discharges of selenium or other pollutants from the Valley Fills prior to termination of this Decree in accordance with Section XII of this Decree.

13. Within thirty (30) days of the Effective Date of this Consent Decree, twice monthly sampling for selenium shall occur at the toe of the Valley Fills. Such samples must be collected at least ten (10) days apart. Sampling under this Paragraph 13 shall continue on a twice monthly basis only until a permit application is submitted pursuant to Paragraph 16 below.

14. The results of the sampling required pursuant to Paragraph 13 shall be submitted to Plaintiffs' counsel within thirty (30) days of receipt of said results.

15. Samples taken for the purposes of water quality monitoring in order to meet NPDES permitting application requirements may be used to fulfill the requirement for twice monthly selenium sampling under this Consent Decree.

16. Within ninety (90) days of the Effective Date of this Consent Decree, a good faith application for a CWA NPDES discharge permit from WVDEP to cover the discharge of pollutants from the Valley Fills shall be submitted to WVDEP and said NPDES permit shall be diligently pursued.

17. Said permit application shall include the results of all sampling from the toe of the Valley Fills, including any in-stream sampling in Pounding Mill Branch, Bear Fork, and Meador Fork, conducted by Defendant or by any third party on Defendant's behalf, since the filing of the Complaints, up to the date of filing of said permit application. The locations of these samples in relation to the Valley Fills shall be clearly identified in the application.

18. A copy of said permit application shall be sent to Plaintiffs' counsel within seven (7) days of its submission to WVDEP. All reasonable requests by WVDEP for additional information not included in the permit application shall be responded to in a timely manner, as required by WVDEP's permitting rules and regulations.

19. A copy of any NPDES permit issued by WVDEP to cover pollutant discharges from the Valley Fills shall be sent to Plaintiffs' Counsel within seven (7) days of receipt by Defendant.

20. Plaintiffs do not waive their right to bring a new action based on alleged pollutant discharges that may occur after this Consent Decree is terminated in accordance with Section XII of this Decree, and Defendant reserves any and all defenses thereto.

## VII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

21. This Consent Decree resolves the civil claims of Plaintiffs for the violations alleged in the Complaints, as well as for any alleged unpermitted discharges of pollutants from the Valley Fills that may occur prior to termination of this Consent Decree.

22. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## VIII. COSTS

23. Defendant shall pay Plaintiffs' reasonable costs and attorneys' fees, including expert witness fees and costs incurred by Plaintiffs in conjunction with this civil action, through the Effective Date of this Consent Decree, as identified in Paragraphs 24 through 26 below.

24. Plaintiffs' reasonable costs and fees total $57,461.00. Of that amount, $34,690.00 is for Plaintiffs' reasonable attorneys' fees, allocated as follows:

$27,300 for Amy Vernon-Jones's 140 hours at the reasonable rate of $195/hour.

$2,950.00 for Derek Teaney's 10 hours at the reasonable rate of $295/hour.

$2,365 for Benjamin Luckett's 11 hours at the reasonable rate of $215/hour.

$2,075.00 for Joe Lovett's 5 hours at the reasonable rate of $415/hour.

25. In addition to attorneys' fees, Plaintiffs' costs and expert expenses were $22,771.

26. Not later than thirty (30) days from the Effective Date of this Consent Decree, a check shall be delivered to Plaintiffs' counsel for $57,461.00 made payable to the Appalachian Mountain Advocates. Appalachian Mountain Advocates shall be wholly responsible for the proper distribution of any portions of the delivered sum to any and all other attorneys or other entities who may be entitled thereto. The sum delivered under this paragraph shall be a complete settlement of Plaintiffs' claims for costs and fees incurred up to the Effective Date of this

Consent Decree, and thereafter for responding to possible comments on this Decree by the Department of Justice or others.

## IX. NOTICES

27. Unless otherwise specified herein, whenever notifications, submissions, reports or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To Plaintiffs:

Amy Vernon-Jones
Appalachian Mountain Advocates
P.O. Box 507
Lewisburg, WV 24901

To Defendant:

M. Shane Harvey
Jackson Kelly PLLC
P.O. Box 553
Charleston, WV 25301

Timothy J. Hagerty
Frost Brown Todd LLC
400 West Market St., 32nd Floor
Louisville, KY 40202

Helen Hart
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA 23510

Joe Carpenter
Norfolk Southern Corporation
3 Commercial Place
Norfolk, VA 23510

28. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

29. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## X. RETENTION OF JURISDICTION

30. The Court shall retain jurisdiction over these cases until termination of this Consent Decree pursuant to Section XII of this Decree, for the purpose of resolving disputes arising under this Decree, entering orders modifying this Decree pursuant to Section XI of this Decree, or effectuating or enforcing compliance with the terms of this Decree.

31. Plaintiffs and Defendant reserve all legal and equitable rights and defenses available to them to enforce or defend compliance with the provisions of this Consent Decree.

## XI. MODIFICATION

32. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XII. TERMINATION

33. This Consent Decree shall terminate when a valid NPDES permit has been obtained from WVDEP to authorize pollutant discharges from the Valley Fills, or eighteen (18) months following the Effective Date, whichever occurs first.

## XIII. SIGNATORIES/SERVICE

34. Each undersigned representative of Plaintiffs and Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

35. This Consent Decree may be signed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement, and its validity shall not be challenged on that basis.

## XIV. INTEGRATION

36. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XV. SEVERABILITY

37. If any provision of this Decree or the application thereof to anyone or under any circumstances is adjudicated to be invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision or application of this Decree which can be given effect without the invalid or unenforceable provision or application.

## XVI. PREPARATION OF AGREEMENT

38. The Parties hereto hereby acknowledge that this Decree was the result of extensive negotiation and discussion among the Parties. The Parties further acknowledge that the Decree was jointly prepared and that no particular Party is to be deemed the drafter or preparer of this Decree. Accordingly, to the extent there should later prove to be ambiguities in the Decree, the Parties agree that such ambiguity is not to be construed in favor of or against a particular Party to this Agreement.

## XVII. WAIVER

39. Any waiver by either Party of any breach or violation of any term or condition of this Decree shall not operate as a waiver of any other breach of such term or condition or any other term or condition, nor shall any failure to enforce any provision hereof operate as a waiver of such provision or of any other provision hereof or constitute or be deemed a waiver or release of any rights, either at law or equity.

## XVIII. CAPTIONS

40. Captions are for convenience only and shall not limit the scope or intent of this Decree, or any part hereof.

## XIX. ACKNOWLEDGMENT

41. Each Party hereto hereby expressly warrants and represents to the other that before executing this document each Party has fully informed themselves of its terms, contents, conditions and effects; and that no promise or representation of any kind or character has been made to either Party, or by anyone acting for either Party, except as is expressly stated in this instrument. Each Party hereto has relied solely and completely upon its own judgment in making this settlement and entering into this Decree.

42. The Parties hereto hereby acknowledge that they have been advised to and have been provided ample opportunity to consult an attorney in connection with any term and/or condition of this Decree. The Parties further acknowledge that they have been provided with reasonable time in which to consider this Decree, and that they have read the Decree and fully understands its provisions.

## XX. FINAL JUDGMENT

43. Upon approval and entry of this Consent Decree by the court, this Consent Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendant. The Court finds that there is no just reason for delay and, therefore, enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

ENTER: November 30, 2015

JOHN T. COPENHAVER, JR.
UNITED STATES DISTRICT JUDGE

For the Plaintiffs, Ohio Valley Environmental Coalition, Inc., West Virginia Highlands Conservancy, Inc., and Sierra Club:

/s/ Amy Vernon-Jones                                    Dated: May 14, 2015
Amy Vernon-Jones (WVBN 12027)
Joseph M. Lovett (WVBN 6296)
Appalachian Mountain Advocates

For the Defendant, Pocahontas Land Corporation, Inc.:

/s/ Aaron S. Heishman                                    Dated: May 14, 2015
M. Shane Harvey (WVBN 6604)
Robert G. McLusky (WVBN 2489)
Aaron S. Heishman (WVBN 11409)
Jackson Kelly PLLC
P.O. Box 553
Charleston, WV 25301